**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| PENNY BLETZ | ) | CASE NO. |
| 2996 Ontario Street | ) | |
| Columbus, Ohio 43224, | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES AND** |
| | ) | **INJUNCTIVE RELIEF** |
| OHIOHEALTH CORPORATION | ) | |
| 3430 OhioHealth Parkway | ) | **JURY DEMAND ENDORSED** |
| Columbus OH 43202, | ) | **HEREIN** |
| | ) | |
| Defendant. | ) | |

Plaintiff Penny Bletz, by and through undersigned counsel, as her Complaint against

Defendant OhioHealth Corporation ("OhioHealth"). states and avers the following:

## PARTIES.

1. Bletz is a resident of the City of Columbus, Franklin County, Ohio.

2. OhioHealth is a corporation for profit that, at all times referenced herein, did business at 3430 OhioHealth Parkway, Columbus, Ohio 43202.

## PERSONAL JURISDICTION.

3. OhioHealth hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over OhioHealth comports with due process.

## SUBJECT MATTER JURISDICTION AND VENUE.

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Bletz is alleging a Federal Law Claim under the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and the Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 et seq.

5. This Court has supplemental jurisdiction over Bletz's state law claims pursuant to 28 U.S.C. § 1367 as Bletz's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this District because OhioHealth does a sizeable portion of their business in this District; they maintain a place of business in this district; and the wrongs herein alleged occurred and/or originated in this District.

## ADMINISTRATIVE HISTORY.

7. On or about April 15, 2025, the EEOC issued a Notice of Right to Sue letter to Bletz regarding the Charges of Discrimination brought by Bletz against OhioHealth in the Bletz EEOC Charge.

8. Bletz received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1).

9. The Right to Sue letter is attached here as Exhibit A.

10. Bletz has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTUAL ALLEGATIONS.

11. Bletz is a former employee of OhioHealth.

12. Bletz began working for OhioHealth on or about May 1, 2019.

13. Bletz worked for OhioHealth a Patient Support Assistant.

14. Bletz was 57 years old when she started at OhioHealth

15. OhioHealth was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day

during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

16. At all times relevant herein, Bletz was employed by OhioHealth for at least 12 months and had at least 1,250 hours of service with OhioHealth and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

17. Bletz was the oldest employee in her department.

18. Throughout her employment Bletz was consistently denied opportunities that were provided to younger coworkers by Rebecca Morrison.

19. Morrison was Blet's supervisor.

20. Morrison was 40 years old.

21. Morrison was the Registered Nurse Manager.

22. Morrison was not responsible for hiring Bletz.

23. Morrison was recently promoted to the Registered Nurse Manager position.

24. Morrison treated Bletz like she was not as smart as younger coworkers because she was not efficient with inputting information into the computer.

25. Bletz was compared to younger coworker Amanda Griffis.

26. Griffis was under the age of 40.

27. Griffis was in her 20s at the time Bletz was employed.

28. Bletz was compared to younger coworker Cassie Kuhn.

29. Kuhn was under the age of 40.

30. Kuhn was in her 20s at the time Bletz was employed.

31. Bletz was compared to younger coworker Heather Armentrout.

32. Armentrout was under the age of 40.

33. Armentrout was in her 30s at the time Bletz was employed.

34. The younger coworkers were favored over Bletz and were given more favorable task and job duties than Bletz.

35. Blez was never asked to be a trainer while her younger coworkers with less experience were.

36. Bletz was constantly overlooked for promotions.

37. Bletz was treated differently than other employees because of her age.

38. On or around November 16, 2020, Bletz was diagnosed with Traumatic Brain Injury ("TBI") which caused her extreme difficulty in completing computer-based task ("Bletz's Disability").

39. Bletz's Disability is a physical impairment that substantially affects major life activities like working.

40. Bletz is a qualified individual with a disability under the Americans with Disabilities Act and Ohio law.

41. Bletz made OhioHealth aware of her disability in or around January of 2021.

42. Bletz informed Human Resources about her disability.

43. On or around January 21, 2021, Bletz made a formal accommodation request to Human Resources and manager Chris Willoughby concerning her TBI ("Accommodation Request").

44. Bletz supplied additional medical documentation to support her need for an accommodation.

45. Bletz's request went ignored ("Accommodation Denial").

46. Bletz continued to inquire about her Accommodation Request to management and supervisors.

47. Bletz supervisors Tammy Thomas and Jeri Soliman demanded Bletz complete tasks outside of her accommodation.

48. When Bletz raised these concerns to Soliman and Thomas, they told Bletz she "just needed to try a little harder."

4

49. Soliman and Thomas even began to yell and tell Bletz she needed to just work harder even despite her disability.

50. Co-workers stated Bletz was "slow" and "stupid" due to her disability.

51. Management failed to remedy ongoing discrimination.

52. On or around February 15, 2024, Bletz's supervisor Thomas instructed Bletz to take two weeks of leave.

53. Thomas said the leave would not interfere with Bletz's position and she could return when she was ready.

54. Bletz complied with Thomas' instructions and took two weeks of leave.

55. Bletz attempted to return to work after the two weeks but was told she would not be able to return unless she submitted FMLA leave paperwork.

56. Three doctors cleared Bletz to return to work.

57. OhioHealth informed Bletz she would not be allowed to return to work unless she has a doctor approve her for FMLA.

58. Bletz did not need her doctor to approve her for FMLA, as she was able to return to work.

59. On or around April 1, 2024, Chris Willoughby informed Bletz that OhioHealth would not accommodate her disability.

60. On or about April 1, 2024, OhioHealth was finding ways to retaliate against Bletz.

61. Willoughby, Thomas, and Accommodation Specialist Rose C. informed Bletz of the termination.

62. In a follow-up meeting on or around May 30, 2024, OhioHealth terminated Bletz ("Termination")

63. Bletz was 62 years old at the time of her termination.

64. OhioHealth terminated Bletz because of her age.

5

65. OhioHealth terminated Bletz because of her disability.

66. OhioHealth terminated Bletz because it perceived her as disabled.

67. OhioHealth terminated Bletz to interfere with her FMLA rights.

68. OhioHealth terminated Bletz in retaliation for utilizing FMLA.

69. Upon information and belief, OhioHealth replaced Bletz with an individual under the age of 40.

70. Terminating an employee based upon an employee's age violates OhioHealth's policies ("Anti-Discrimination Policy").

71. Alternatively, it is acceptable under OhioHealth policy for supervisors to terminate an employee based on an employee's age.

72. Similarly-situated, substantially younger employees were not terminated for like reasons.

73. Terminating an employee based upon an employee's disability violates OhioHealth's policies ("Anti-Discrimination Policy").

74. Alternatively, it is acceptable under OhioHealth policy for supervisors to terminate an employee based on an employee's disability.

75. Similarly-situated, non-disabled employees were not terminated for like reasons .

76. At all times referenced herein, OhioHealth maintained a progressive disciplinary policy ("Discipline Policy").

77. A verbal warning is the lowest level of discipline in the Discipline Policy.

78. Bletz did not receive a verbal warning before the Termination.

79. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

80. Bletz did not receive a written warning before the Termination.

81. A suspension is a higher level of discipline than a written warning.

82. Bletz did not receive a suspension before the Termination.

83. A termination is the highest level of discipline in the Discipline Policy.

84. By immediately terminating Bletz, OhioHealth violated its own progressive disciplinary policy, skipping over all lesser forms of discipline.

85. OhioHealth's stated reason for terminating Bletz is a pretext for age discrimination.

86. OhioHealth's stated reason for terminating Bletz is a pretext for disability discrimination.

87. OhioHealth knowingly terminated Bletz's employment.

88. OhioHealth knowingly took an adverse employment action against Bletz.

89. OhioHealth knowingly took an adverse action against Bletz.

90. OhioHealth intentionally skipped progressive disciplinary steps in terminating Bletz.

91. OhioHealth intentionally terminated Bletz's employment.

92. OhioHealth intentionally took an adverse employment action against Bletz.

93. OhioHealth intentionally took an adverse action against Bletz.

94. OhioHealth knew that skipping progressive disciplinary steps in terminating Bletz would cause Bletz harm, including economic harm.

95. OhioHealth knew that terminating Bletz would cause Bletz harm, including economic harm.

96. OhioHealth willfully skipped progressive disciplinary steps in terminating Bletz.

97. OhioHealth willfully terminated Bletz's employment.

98. OhioHealth willfully took an adverse employment action against Bletz.

99. OhioHealth willfully took an adverse action against Bletz.

100. As a direct and proximate result of OhioHealth's conduct, Bletz suffered and will continue to suffer damages.

8

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq.

101. Bletz restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

102. Bletz is disabled.

103. In the alternative, Defendant perceived Bletz as being disabled.

104. Bletz's condition constituted a physical impairment.

105. At all times referenced herein, Bletz was qualified to perform the functions of her position with OhioHealth.

106. Bletz's condition substantially impaired one or more of her major life activities including working.

107. Defendant perceived Bletz's condition to substantially impair one or more of her major life activities including, but not limited to, working.

108. Defendant treated Bletz differently than other similarly-situated employees based on her disabling condition.

109. Defendant treated Bletz differently than other similarly-situated employees based on her perceived disabling condition.

110. Defendant terminated Bletz without just cause.

111. Alternatively, Defendant's cited reason for Bletz's termination was pretext.

112. Defendant terminated Bletz 's employment based on her disability.

113. Defendant terminated Bletz 's employment based on her perceived disability.

114. Defendant violated R.C. § 4112.02 when it demoted Bletz based on her disability.

115. Defendant violated R.C. § 4112.02 when it terminated Bletz based on her perceived disability.

8

116. Defendant violated R.C. § 4112.02 by discriminating against Bletz based on her disabling condition.

117. Defendant violated R.C. § 4112.02 by discriminating against Bletz based on her perceived disabling condition.

118. Bletz suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

119. As a direct and proximate result of Defendant's conduct, Bletz suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA**

120. Bletz restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

121. Bletz is disabled.

122. In the alternative, Defendant perceived Bletz as being disabled.

123. Bletz's condition constituted a physical impairment.

124. At all times referenced herein, Bletz was qualified to perform the functions of her position with OhioHealth.

125. Bletz's condition substantially impaired one or more of her major life activities including working.

126. Defendant perceived Bletz's condition to substantially impair one or more of her major life activities including, but not limited to, working.

127. Defendant treated Bletz differently than other similarly-situated employees based on her disabling condition.

9

128. Defendant treated Bletz differently than other similarly-situated employees based on her perceived disabling condition.

129. Defendant terminated Bletz without just cause.

130. Alternatively, Defendant's cited reason for Bletz's termination was pretext.

131. Defendant terminated Bletz's employment based on her disability.

132. Defendant terminated Bletz's employment based on her perceived disability.

133. Defendant violated the ADA when it terminated Bletz based on her disability.

134. Defendant violated the ADA when it terminated Bletz based on her perceived disability.

135. Defendant violated the ADA by discriminating against Bletz based on her disabling condition.

136. Defendant violated the ADA by discriminating against Bletz based on her perceived disabling condition.

137. Bletz suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADA.

138. As a direct and proximate result of Defendant's conduct, Bletz suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: AGE DISCRIMINATION IN VIOLATION OF THE ADEA

139. Bletz restates each and every prior paragraph of this complaint, as if it were fully restated herein.

140. Bletz was 62 years of age at the time that OhioHealth terminated her employment.

141. At all times referenced herein, Bletz was a member of a statutorily-protected class under the ADEA.

142. At all times referenced herein, Bletz was qualified to perform the functions of her position with OhioHealth.

143. During her employment, Bletz was subjected to discriminatory and harassing conduct based on her age.

144. OhioHealth knew or should have known of the discriminatory and harassing conduct and failed to take prompt and effective remedial action.

145. OhioHealth's failure to address or remedy the discriminatory and harassing conduct ratified the discrimination against Bletz.

146. On or about April 1, 2024, OhioHealth terminated Bletz 's employment because of her age.

147. OhioHealth replaced Bletz with a substantially younger employee.

148. Similarly situated younger employees were not terminated for similar alleged infractions, demonstrating disparate treatment.

149. OhioHealth's stated reason for Bletz's termination is pretextual, and Bletz's age was the "but-for" cause of her termination.

150. OhioHealth's actions constitute unlawful age discrimination in violation of the ADEA. As a result of OhioHealth's wrongful conduct, in violation of the ADEA, Bletz has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive, equitable, and compensatory monetary relief.

151. As a result of OhioHealth's wrongful conduct, in violation of the ADEA, Bletz has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

152. In its wrongful conduct as alleged above, OhioHealth acted with malice or reckless indifference to the rights of Bletz, thereby entitling him to an award of punitive damages.

**COUNT IV: AGE DISCRIMINATION IN VIOLATION OF OHIO R.C. § 4112.02 *et seq.***

153. Bletz restates each and every prior paragraph of this complaint, as if it were fully restated herein.

154. Bletz was 62 years of age at the time that OhioHealth terminated her employment.

155. At all times referenced herein, Bletz was a member of a statutorily-protected class under Ohio R.C. § 4112.02(A) based on her age.

156. At all times referenced herein, Bletz was qualified to perform the functions of her position with OhioHealth.

157. On or about April 1, 2024, OhioHealth terminated Bletz 's employment because of her age.

158. OhioHealth replaced Bletz with a substantially younger employee.

159. Similarly situated younger employees were not terminated for similar alleged infractions as Bletz was terminated for.

160. OhioHealth's stated reason for Bletz's termination is pretextual, and Bletz's age was the "but-for" cause of her termination.

161. OhioHealth's termination of Bletz constitutes unlawful age discrimination in violation of Ohio R.C. § 4112.02(A)

162. As a result of OhioHealth's wrongful conduct, in violation of Ohio R.C. § 4112.02(A), Bletz has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive, equitable, and compensatory monetary relief.

163. As a result of OhioHealth's wrongful conduct, in violation of Ohio R.C. § 4112.02(A), Bletz has suffered mental anguish and emotional distress, including, but not limited to, depression,

humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

164. In its wrongful conduct as alleged above, OhioHealth acted with malice or reckless indifference to the rights of Bletz, thereby entitling him to an award of punitive damages.

## COUNT V: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

165. Bletz restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

166. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

167. OhioHealth is a covered employer under FMLA.

168. During her employment, Bletz qualified for FMLA leave.

169. OhioHealth failed to properly advise Bletz of her rights under FMLA.

170. OhioHealth unlawfully interfered with Bletz's exercise of her rights under FMLA in violation of Section 105 of FMLA and section 825.220 of FMLA regulations.

171. OhioHealth's act of behaving disparate and hostility toward Bletz during her FMLA leave in an attempt to dissuade her from utilizing her FMLA leave violated and interfered with Bletz's FMLA rights.

172. OhioHealth violated section 825.300(c)(1) of FMLA and interfered with Bletz's FMLA rights.

173. As a direct and proximate result of OhioHealth's conduct, Bletz is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT VI: RETALIATION IN VIOLATION OF FMLA

174. Bletz restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

175. During her employment, Bletz utilized leave.

176. After Bletz utilized her qualified leave, OhioHealth retaliated against her.

177. OhioHealth retaliated against Bletz by terminating her employment.

178. OhioHealth willfully retaliated against Bletz in violation of 29 U.S.C. § 2615(a).

179. As a direct and proximate result of OhioHealth's wrongful conduct, Bletz is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF.

WHEREFORE, Plaintiff Bletz respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

   (i)     Requiring OhioHealth to abolish discrimination, harassment, and retaliation;

   (ii)    Requiring allocation of significant funding and trained staff to implement all changes within two years;

   (iii)   Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

   (iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

14

(v)     Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) An award against Defendant of compensatory and monetary damages to compensate Bletz for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Bletz's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/William T. Lagrone*
William T. LaGrone (0104199)
Trisha Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1105 Schrock Road Suite 307
Columbus, Ohio 43229
Phone: (614) 468-8043
Fax:     (216) 291-5744
Email:  trisha.breedlove@spitzlawfirm.com
             William.lagrone@spitzlawfirm.com

*Attorneys for Plaintiff Penny Bletz*

15

## JURY DEMAND.

Plaintiff Penny Bletz demands a trial by jury by the maximum number of jurors permitted.

/s/William T. LaGrone
William T. LaGrone (0104199)
Trisha Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**